JOHN MYER, Appellant, v. W. H. GRAY, Appellee.

ARBITRATION AND AWARD: Common-Law Submission—Effect. An award under a common-law submission may be confirmed and enforced by judgment.

*Appeal from Monona District Court.—W. G.* SEARS, Judge.

FEBRUARY 16, 1920.

SUIT in equity to adjudicate and enforce a written award of arbitrators under a common-law arbitration. The answer was, in substance, a general denial. The trial court dismissed the petition, and taxed the costs equally to each party. The plaintiff has appealed.—*Reversed.*

*Prichard & Prichard,* for appellant.

*T. B. Lutz & Son,* for appellee.

EVANS, J.—We have no argument for the appellee. Upon the record presented by appellant, it is made to appear that there was pending and in course of trial in the district court an action between the parties hereto. Thereupon, the parties orally agreed to submit their whole controversy to certain designated arbitrators. Pursuant to this agreement, the trial was stopped, and the cause dismissed. The arbitrators presented a written award. The controversy involved the question of drainage rights and the casting of surface water. The parties were adjoining landowners, with an east and west highway between them. The general course of the flow of surface water is from northwesterly to southeasterly. The plaintiff owns the land on the north, and defendant, that on the south, his land being the servient land. The defendant had maintained a dike along his north line. It was claimed by the plaintiff that this interfered with the natural flow of surface water from his land.

It appears, also, that, some years prior, an arrangement had been entered into between the defendant and Elmore, grantor of the plaintiff, whereby an open ditch was constructed upon defendant's land by the mutual co-operation of the parties, the purpose of which was to carry the surface water off from the defendant's land. This ditch suffered more or less interference by the establishment of a

railroad right of way; and, at the time of the arbitration, it had become clogged, to such an extent as to be of little, if any, efficiency. We infer, also, that their then controversy involved the question whether Myer, the plaintiff, was conducting water towards and upon the defendant's land which did not flow in such direction in its natural course.

The written finding of the arbitrators was as follows:

### "Award of Arbitrators.

"The undersigned arbitrators, who were duly chosen by the respective parties hereto, to examine and determine the controversy between the respective parties regarding the ditching and diking and drainage of their respective lands and the control of the water in the public highway ditches running along and through their respective lands, to wit, the southeast quarter of Section 33, Township 85, Range 43, Maple Township, belonging to John Myer, and the northeast quarter of the northwest quarter and the north half and northeast quarter of Section 4, Township 84, Range 43, Center Township, belonging to W. H. Gray, do hereby make the following award:

"(1) We advise that the present tile drainage culvert in the public highway which runs north and south between the lands of said John Myer and one Leonard Gray at the north end of said highway remain as it now is, and require that John Myer construct a drainage ditch across the corner where said road turns south, commencing at the present ditch and at south end of said tile culvert and cutting across the corner of said Myer's land diagonally 134 feet to the highway ditch on east side of said highway; thence running south to and across the public highway running east and west to the north line of said Wm. H. Gray's said land and connecting with the drainage ditch running east and west on the south side of said highway.

"That the said Myer is required to open and clean out

said ditch running along the east side of the public highway running north and south between this land and the land of Leonard Gray, to wit, east half of the southwest quarter of said Section 33, and be permitted to use the dirt from said ditch in making a dike along his said line fence and east of said ditch and highway, running to the north line of said Wm. H. Gray's land and connecting with the ditch to be constructed by the said Wm. H. Gray at the north line of said Wm. H. Gray's land as aforesaid, but the said Myer is not to make or construct the said dike to any greater height than the grade of the public highway.

"(2) The said Wm. H. Gray is permitted to open up and clean out the ditch on the south side of the public highway running east and west along the north line of said Gray's land and permitted to use the dirt from said ditch in repairing and maintaining his certain dike already constructed by him along the north line of his said premises; but said Gray is not to make or construct said dike to any greater height than the said public highway. The said ditch is to run east to a point east of the public highway, connecting with the road ditch running south along the line of said Myer aforesaid. The said Gray is to construct a ditch running diagonally and in a southeasterly direction 250 feet to the contract ditch hereafter set out, and use the dirt from said ditch in constructing a dike along the south and west sides of said diagonal 250-foot ditch, and ending at said contract ditch at a point 300 feet southwest from the north line of said Wm. H. Gray.

"(3) That said contract ditch as established by Helen Elmore and said Wm. H. Gray by agreement in relation thereto, dated May 1, 1905, and recorded on the 4th day of May, A. D. 1905, in Book F of Miscellaneous Monona County Records, on page 585, is to be opened up by the respective parties and maintained as set forth in said agreement, except that said Myer is only required to open said ditch

commencing at his south line and running north to a distance 40 rods, and the said Wm. H. Gray is to open up said ditch to the south line of his said premises. The said Myer is to put in the bridge across said ditch where it crosses the private way of said Gray leading to and across said railroad right of way, all as provided in said agreement on the part of Helen Elmore.

"The arbitrators attach hereto a plat of said drainage, ditching, and diking, also a copy of said recorded agreement, and make them a part hereof.

"Dated at Mapleton, Iowa, this 14th day of March, 1914."

[Duly signed.]

Both parties were witnesses at the trial herein in the district court. They both agreed that there was an oral agreement of arbitration, and that the foregoing written award was rendered pursuant thereto. The award is, therefore, binding as between them, as a common-law award. Being such, either party was entitled to adjudicate it, and to enforce it by appropriate action. *Foust v. Hastings,* 66 Iowa 522; *Love v. Burns,* 35 Iowa 150; *Conger v. Dean,* 3 Iowa 463; *Fink v. Fink,* 8 Iowa 313; *Zook v. Spray,* 38 Iowa 273; *McKinnis v. Freeman,* 38 Iowa 364; *Thornton v. McCormick,* 75 Iowa 285; *Wilkinson v. Prichard,* 145 Iowa 65.

The reason for the dismissal of plaintiff's petition is not disclosed in the record before us. Nor can we discover from such record any reason why the award of arbitration should not be deemed fully proved, and entitled to the sanction of a decree accordingly.

Upon the record, the plaintiff is entitled to a decree adjudicating the rights of the parties strictly in accord with the written award made, and above set forth. Being entitled to such decree, he is, of course, entitled to appropriate

methods of its enforcement. We do not think that the nature of the issues is such as to include any question of damages. The judgment dismissing the petition will, therefore, be reversed, and a decree ordered finding the rights of the parties in conformity with the written award of the arbitrators, with leave to either party to move either for a decree in this court or for a remand for such purpose to the district court.—*Reversed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.